## Josiah A. Brigham *vs.* John A. Fayerweather & another.

Worcester. Oct. 5, 6, 1886. — Feb. 25, 1887. Devens & W. Allen, JJ., absent.

A woman, whose mind was so impaired by old age and sickness that she had not sufficient mental capacity to execute a deed, executed a mortgage of her real estate to a creditor, who practised no fraud, to secure a claim which was then due, whereby payment of the claim was postponed for a year. She died eighteen months afterwards, and five months after her death her devisee brought a bill in equity to set aside the mortgage. *Held*, that he could, on these facts, maintain the bill; and that his presence when the mortgage was executed did not estop him from so doing.

Bill in equity, filed May 21, 1884, by a devisee of real estate, to set aside a mortgage upon it given by his devisor, Azubah Brigham, to the defendants, to secure payment of the sum of $3356.64, in one year, with interest, this amount being represented by two promissory notes; and to remove a cloud upon the title to the property.

The bill alleged that, at the time of giving the mortgage deed, Azubah Brigham was very aged, sick, and infirm, and that her mental powers were so weakened and impaired by age and sickness that she was wholly incapable of transacting the business of executing and delivering a deed of her property, and was of unsound mind. The bill also alleged that the deed was procured by fraud and undue influence on the part of the defendants.

The answer admitted that, at the time of the execution of the mortgage, the mortgagor was aged, but denied that her mental powers were weak or that she was incapable of transacting the business alleged in the bill, or was of unsound mind. The answer also denied that there was any fraud or undue influence on the part of the defendants.

Three issues of fact were framed for the jury, as follows: "1. Was Azubah Brigham of sufficient mental capacity at the time the mortgage deed referred to in the bill was executed to transact the business of executing said deed? 2. Was said deed procured by the fraud or undue influence of the defendants, or either of them? 3. What was the amount of the debt justly

due from said Azubah Brigham to the defendants at the time said mortgage deed was executed, and which the parties designed to secure by the mortgage?"

At the trial of the issues, the jury answered the first question in the negative, and could not agree upon the second. The third was not submitted to them. After the exceptions in the case and the motion for a new trial had been overruled (see 140 Mass. 411), the plaintiff's counsel moved that the order directing issues for the jury be set aside, so far as it related to the second and third issues, on the ground that they were no longer material; and that a decree be made granting the relief prayed for in the bill.

At the hearing upon this motion in the Superior Court, before *Knowlton*, J., the following facts were agreed: The consideration of the notes described in the mortgage was indebtedness from Azubah Brigham, the mortgagor, which had then been for a considerable time due, a part of it to one of the mortgagees, represented by a note which was given up, and a part to the other of the mortgagees. The defendants contended that the previous indebtedness equalled the amount of the notes, and the plaintiff admitted that it was nearly, if not quite, as large as the notes; and both parties agreed that nothing else of value entered in to make up the amount named. The mortgage was made on June 15, 1882, and the mortgagor died in December, 1883, without having made any claim, or done anything else regarding the mortgage or the title to the property after the mortgage was made. The plaintiff was present with Azubah Brigham and the defendants at the making of the mortgage.

The mortgagor's estate was declared insolvent by the Probate Court after the bill was brought. No question was made that the defendants were seeking to hold and enforce the mortgage for the payment of the notes described in it.

Upon these facts and the verdict of the jury, the judge ruled that the plaintiff could avoid the mortgage, and that a court of equity might properly grant the relief prayed for; ordered that the order directing issues of fact for the jury be set aside, so far as it related to the second and third issues, and a decree be entered as prayed for; and, at the request of the defendants, reported the case for the determination of this court.

If the plaintiff was entitled to the relief prayed for, a decree was to be entered accordingly; otherwise, such other order to be made as law and justice might require.

*T. G. Kent*, for the defendants. The only ground on which a court of equity interferes to set aside a contract or deed of an idiot, lunatic, or person *non compos mentis*, is fraud, overreaching, taking advantage of circumstances. 1 Story Eq. Jur. § 227. *Frazer* v. *Frazer*, 2 Del. Ch. 260. *Coleman* v. *Frazer*, 3 Bush, 300.

The deed of an insane person is not void, but voidable. *Carrier* v. *Sears*, 4 Allen, 336. *Howe* v. *Howe*, 99 Mass. 88.

If a contract is made with a lunatic or insane person in good faith, without taking any advantage of his position, it is valid. *Price* v. *Berrington*, 3 Macn. & G. 486. *Molton* v. *Camroux*, 2 Exch. 487. *Campbell* v. *Hooper*, 3 Sm. & Giff. 153. *Ashcraft* v. *De Armond*, 44 Iowa, 229. This is especially true if the person dealing with the insane person did not know of his insanity. *Niell* v. *Morley*, 9 Ves. 478. Or if he cannot be restored to the same position as before the contract. *Molton* v. *Camroux*, *ubi supra*.

The presence of the plaintiff at the time the mortgage was made is a good reason why the deed should not be set aside, even though the mortgagor was insane. *Sergeson* v. *Sealey*, 2 Atk. 412.

The mortgagor was not a lunatic, an idiot, or insane person, but simply a person whose mind had been weakened by old age, sickness, and infirmity. The finding of the jury is to be taken in connection with the allegations of the bill. "She was very aged, sick, and infirm, and her mental powers were weakened and impaired by age and sickness," the bill alleges. "She had not sufficient mental capacity to execute this mortgage deed," the verdict finds.

The verdict is not to be stretched. It might mean that the mortgagor was a hopeless idiot without a glimmer of reason left, or it might mean that she had just passed the invisible line where strength fades into weakness; but the burden is on the plaintiff to show the degree of incapacity, as well as the fact.

Lord Chancellor Hardwicke said, in *Ex parte Barnsley*, 3 Atk. 168, "Being *non compos*, of unsound mind, are certain terms in

law, and import a total deprivation of sense," and he refused to issue a commission of lunacy where by the return it appeared that the subject of inquiry was, "from the weakness of his mind, incapable of governing himself and his lands and tenements."

Chancellor Kent, in *In re Barker*, 2 Johns. Ch. 232, reviews this case, and states that the law was afterwards changed. Both judges agree that a person not having sufficient mental capacity to do an act is to be protected from the imposition of the other party. Cases of insanity, and of weakness of mind amounting to incapacity, are treated as analogous, the difference being only in degree; but in either case the aid of the court is invoked to set aside a deed or other contract only on the ground of imposition or overreaching. 1 Story Eq. Jur. 234. *Coleman* v. *Frazer*, *ubi supra*. *Osmond* v. *Fitzroy*, 3 P. Wms. 129. *Longmate* v. *Ledger*, 2 Giff. 157. *Marshall* v. *Billingsly*, 7 Ind. 250. *Allore* v. *Jewell*, 94 U. S. 506. *Atlantic Delaine Co.* v. *James*, 94 U. S. 207. *Mann* v. *Betterly*, 21 Vt. 326.

Even if the deed was fraudulent, it will not necessarily be set aside, but will be permitted to stand as a security for what is really due. *Wharton* v. *May*, 5 Ves. 27, 69. *Purcell* v. *M'Namara*, 14 Ves. 106. *Pickett* v. *Loggon*, 14 Ves. 215, 244. *Dunn* v. *Chambers*, 4 Barb. 376.

The defendants cannot be restored to as favorable condition as they were in when the mortgage was made. They were at that time in condition to secure their claims by attachment. They were overdue. In the place of those claims they accepted notes secured by mortgage which would not become due for one year. It is not material that they did not bring suit while the mortgagor lived. They did not know or have any reason to suppose that their mortgage was not a valid security.

*F. P. Goulding*, for the plaintiff.

C. ALLEN, J. It is settled in this Commonwealth that the deed of an insane person is ineffectual to convey a title to land, good against the grantor, or against his heirs and devisees, unless it is confirmed by the grantor himself when of sound mind, or by his legally constituted guardian, or by his heirs or devisees. *Valpey* v. *Rea*, 130 Mass. 384, and cases there cited. And such deed may be disaffirmed without returning the consideration money, or placing the other party *in statu quo*. *Chandler* v.

*Simmons*, 97 Mass. 508, 514, 515. Nor is it material that, in taking the deed, the grantee acted in good faith, and without knowledge of the grantor's insanity, because he who deals with an insane person, as with an infant, does so at his peril. *Gibson* v. *Soper*, 6 Gray, 279, 282. As was said in *Seaver* v. *Phelps*, 11 Pick. 304, 306, 307, " The fairness of the defendant's conduct cannot supply the plaintiff's want of capacity ; " and again, " We are aware that insanity is sometimes hard to detect, and that persons dealing with the insane may be subjected to loss and difficulty ; but so they may be by dealing with minors." A similar rule of law is also held in *Hovey* v. *Hobson*, 53 Maine, 451, *Crawford* v. *Scovell*, 94 Penn. St. 48, *Somers* v. *Pumphrey*, 24 Ind. 231, and in other cases.

We see no good reason why a court of equity should refuse to interfere to set aside the conveyance. The verdict of the jury has settled the fact of the grantor's incapacity, and no question remains open as to that. It is to be assumed that she was not of sufficient mental capacity to execute the deed. It also appears from the bill, the answer, and the defendants' brief, that the nature of her incapacity was that her mind had become weakened by old age, sickness, and infirmity. Under these circumstances, the defendants met her personally, and procured from her the execution of the mortgage, the sole consideration of which was to secure preëxisting indebtedness. She died eighteen months afterwards, and the plaintiff's bill to set aside the mortgage was brought five months after her death. There were no such circumstances, raising special equities in favor of the defendants, as have sometimes led courts of equity to refuse active aid in setting aside invalid instruments. The case presented is not like that of a transaction in the ordinary course of business, with a person apparently in the full possession of his faculties, and with nothing in his appearance or condition to suggest doubt or inquiry, and where there has been an equal and fair exchange of considerations, so that the dealing may be said to have been as much for the benefit of the grantor as of the grantee. There has been no subsequent conveyance to an innocent *bona fide* purchaser for value, nor any expenditure of money by the grantees upon the property by way of improvement. *Elliot* v. *Ince*, 7 De G., M. & G. 475, 487. *Price* v. *Berrington,*

3 Macn. & G. 486. We assume that the grantees practised no fraud and exercised no undue influence upon the grantor; but the circumstances do not show any such strong equity in their favor as to enable them to resist a bill in equity to set aside a conveyance which is clearly voidable at law, and which at present is a cloud upon the plaintiff's title. *Clouston* v. *Shearer*, 99 Mass. 209.

The defendants also contend that the plaintiff is estopped to maintain his bill, because he was present at the making of the mortgage. But this falls short of what is necessary in order to create an estoppel.

In the opinion of a majority of the court the entry must be,

*Decree for the plaintiff.*