# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

CATHERINE R. WODELL *vs.* JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY.

Suffolk. March 6, 1946. — June 11, 1946.

Present: FIELD, C.J., LUMMUS, QUA, & SPALDING, JJ.

*Insurance*, Life insurance: insanity of insured, rights of beneficiary,
change of beneficiary, surrender of policy. *Payment. Insanity.*

In an action of contract for the full amount of a policy of life insurance,
brought after the death of the insured by the beneficiary originally
named therein, where it appeared that the insured while insane but
not under guardianship had purported to substitute his estate as bene-
ficiary under a right reserved in the policy and then had surrendered
the policy and had received its cash surrender value from the insurer,
which acted in the change of beneficiary and in the payment to the
insured in good faith and without knowledge of his insanity, the plain-
tiff was entitled to have the policy reinstated as it had been before the
purported change of beneficiary, but the insurer was entitled to credit
for the amount it had paid to the insured.

CONTRACT. Writ in the Superior Court dated January
15, 1945.

The claim in the declaration was for $5,000, the aggregate
sum of the face value of five policies of life insurance.

The case was heard by *Donnelly*, J., upon a case stated,
the parties agreeing that, if the plaintiff was entitled to
recover, "the sum of $2,845 paid   . . to the insured

is to be credited on account of the face amount of the policies, leaving the sum of $2,155 due the plaintiff, with interest from the date of death."

L. B. *Newman,* (*F. E. Gillen* with him,) for the plaintiff.

R. C. *Evarts,* for the defendant.

Qua, J. This action is brought by the widow of St. Clair A. Wodell upon five paid up policies insuring his life issued by the defendant in 1917, in all of which the plaintiff was originally named as beneficiary. A report upon a case stated brings the case here.

On May 13, 1944, the insured changed the beneficiary in accordance with a right reserved in each policy and substituted his own estate for the plaintiff as beneficiary. On May 15, 1944, he surrendered the policies in accordance with the provisions thereof and received the full cash surrender value, amounting to $2,845. On May 13, 1944, and May 15, 1944, and thereafter until his death on August 25 of that year the insured was insane and lacked mental capacity to perform any legal act. The defendant had no notice of the insured's insanity and lack of capacity until after his death. It acted on the change of beneficiary and paid the surrender value of the policies in good faith and in the regular course of its business. The insured was at no time under guardianship. Due proof of death was furnished.

The beneficiary in a life policy in which a right to change the beneficiary has been reserved has more than a mere expectancy. He has a qualified property interest in the contract which ripens into an absolute right if the insured dies without having effected a valid change of beneficiary. *Kochanek* v. *Prudential Ins. Co.* 262 Mass. 174, 177–178. *Resnek* v. *Mutual Life Ins. Co.* 286 Mass. 305, 308. The defendant rightly refrains from questioning the standing of the plaintiff as the original beneficiary to avoid the effect of acts of the insured attempted at a time when he was legally incompetent. *Savage* v. *McCauley,* 301 Mass. 162. *Shinholser* v. *Henry,* 151 Ga. 237. *Searles* v. *Northwestern Mutual Life Ins. Co.* 148 Iowa, 65, 75–77. *Columbian National Life Ins. Co.* v. *Wood,* 193 Ky. 395, 400. *Wojtczuk* v. *Oleksik,* 168 Md. 522. *Grand Lodge Ancient Order of United Work-*

*men* v. *Frank,* 133 Mich. 232. *Grand Lodge Ancient Order of United Workmen* v. *McGrath,* 133 Mich. 626. *Fendler* v. *Roy,* 331 Mo. 1083, 1093. *McMurtray* v. *McMurtray,* 67 Okla. 50. And see *Parry* v. *Parry,* 316 Mass. 692, 696, where, however, the insured had been adjudicated insane.

But the defendant relies upon the principle established in *Reed* v. *Mattapan Deposit & Trust Co.* 198 Mass. 306, 314, where this court held that a bank which in good faith, in the ordinary course of business, and without knowledge of his condition had cashed the check of a depositor who had become insane could not be compelled to pay the money again to his administrator. The decision was placed upon the grounds that the cashing of the check was not a new contract with an insane person, but was "only the performance of the promise whereby the defendant discharged its indebtedness," and that no duty devolved upon the bank to guard against any misuse to which the depositor might put money lawfully due to him and honestly paid to him in the ordinary course of business without knowledge of his lunacy. The same principle was extended and applied in *Leighton* v. *Haverhill Savings Bank,* 227 Mass. 67, to a case where a savings bank, without knowledge that its depositor had become insane, had paid out the amount of the deposit upon an order signed by her. The rule in these cases is to be distinguished from the general rule long prevailing in this Commonwealth that fair dealing and lack of knowledge will not prevent the setting aside of contracts of an insane person. *Seaver* v. *Phelps,* 11 Pick. 304. *Gibson* v. *Soper,* 6 Gray, 279. *Brigham* v. *Fayerweather,* 144 Mass. 48, 51. *Reed* v. *Mattapan Deposit & Trust Co.* 198 Mass. 306, 314. *Sutcliffe* v. *Heatley,* 232 Mass. 231. *Brewster* v. *Weston,* 235 Mass. 14, 16. *Foss* v. *Twenty-Five Associates of Roxbury, Inc.* 239 Mass. 295, 297.

There is strength in the analogy between the case of the bank paying out a deposit, whether to the depositor or on his order, and the case of the insurance company paying on a policy whether to an original beneficiary or to a sub-

stituted beneficiary or by way of surrender under an option of the policy. In all these instances it seems that a debtor is merely paying to its creditor according to a previously existing obligation and not in any true sense entering into a new contract. The arguments from the standpoint of commercial necessity are at least similar. Several other jurisdictions have applied or approved the application of the theory of the *Reed* and *Leighton* cases to payments made by insurance companies on policies in the course of business and without knowledge that a change of beneficiary or assignment had been made by the insured while insane. *Metropolitan Life Ins. Co.* v. *Bramlett*, 224 Ala. 473. *New England Mutual Life Ins. Co.* v. *Reynolds*, 217 Ala. 307, 310–311. *Bosworth* v. *Wolfe*, 146 Wash. 615, 620–621. *State Life Ins. Co.* v. *Coffrini*, 285 Fed. 560. *New York Life Ins. Co.* v. *Federal National Bank*, 151 Fed. (2d) 537, certiorari denied, sub nomine *Federal National Bank* v. *New York Life Ins. Co.* 327 U. S. 778. We incline to agree with these decisions. They apply, however, only to cases where the company has actually paid in the course of business without notice of the insanity. Before payment, or after payment with notice, the original beneficiary has the right to set aside a change of beneficiary or a surrender of the policy by an insane insured, as the cases hereinbefore cited amply demonstrate.

But it does not follow from what has been said that the plaintiff cannot recover in this action. The defendant has not paid the face value of the policies. It has paid only their surrender value, amounting to not much over half their face value. The defendant argues in substance that this was a payment in full in accordance with one of the options of the policies, and that upon such payment without notice of the insanity of the insured the defendant was entitled to close its books with respect to these policies and to be wholly relieved from them. Doubtless for most purposes this would be so. But we are dealing with a peculiar situation, and we are applying to it the doctrine of *Reed* v. *Mattapan Deposit & Trust Co.* 198 Mass. 306, 314. That doctrine was scarcely the product of cold logic.

It was in the nature of an exception to the general rule that an insane person is not bound by acts which would bind sane persons. The court apparently thought such exception necessary in order that business might be transacted safely and that the debtor making a simple payment of its debt might be protected from the injustice of a double liability which otherwise it would usually be unable to avoid through the exercise of any practicable degree of diligence. The boundaries of the doctrine need not be defined now. It is equitable in nature and should be moulded to accomplish equitable results.

In cases where the surrender value has been paid, in our opinion, an entirely equitable result would be brought about if the policy were regarded as reinstated, any necessary adjustments being made with respect to premiums and dividends, and if the surrender value were credited to the defendant as of the date the defendant paid it to the insured. The plaintiff would recover the balance. We have no doubt a proper calculation could be made, but if this should prove impossible the plaintiff might have to suffer to the extent, probably slight, that the defendant could not be placed in as favorable a position as it would have occupied if the surrender value had not been paid. In this way injustice to the company would be avoided as in *Reed* v. *Mattapan Deposit & Trust Co.* 198 Mass. 306, 314, by giving credit for the actual payment made by it, and at the same time the beneficiary would not wholly lose his rights through the irresponsible act of an insane person. The beneficiary was permitted to recover the balance over the surrender value paid to an insane insured in *Nutter* v. *Des Moines Life Ins. Co.* 156 Iowa, 539, *Hicks* v. *Northwestern Mutual Life Ins. Co.* 166 Iowa, 532, *Sluder* v. *National Americans*, 101 Kans. 320, 323, *Wells* v. *Covenant Mutual Benefit Association*, 126 Mo. 630, and *New York Life Ins. Co.* v. *Hagler*, (Tex. Civ. App.) 169 S. W. 1064. We do not necessarily subscribe to everything said in these cases, but in general the result reached in them seems right.

In the case before us, however, the parties have stipulated as to the damages recoverable, if the plaintiff is

entitled to recover at all, and as we think she is entitled to recover, in accordance with the stipulation, judgment will be entered for the plaintiff for $2,155, with interest from the date of the death of the insured.

*So ordered.*